UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**JULIO CESAR CONCEPCION,**<br><br>　　　　　　　　**Defendant** | Crim No. 15-15 (KM)<br><br>Crim No. 15-18 (KM)<br><br>**OPINION and ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

　　The defendant, Julio Cesar Concepcion, has filed identical motions in his two criminal cases (15cr15 DE 96, 15cr18 DE 24)[1] for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The motions invoke the threat of the COVID-19 pandemic and allege that the defendant has heart problems and high blood pressure, which make him particularly vulnerable. The government responds that there is no medical evidence that Mr. Concepcion suffers from any serious condition. It describes the considerable steps that it has taken to minimize the risk and reality of COVID-19 in the prisons. Finally, it adds that, although there have been cases in the Fort Dix satellite prison camp, there have been none in the Fort Dix FCI where Mr. Concepcion is located.

　　On July 21, 2015, I sentenced Mr. Concepcion to concurrent terms of imprisonment totaling 84 months, based on two fraudulent schemes or conspiracies. The first scheme was to receive stolen government funds (18 U.S.C. § 641) and defraud the United States (18 U.S.C. § 371). It involved identity theft and the receipt of approximately $2.5 million in fraudulently obtained tax refunds. The second was a wire fraud conspiracy (18 U.S.C. § 1349) perpetrated against banks, mortgage companies, and ultimately the U.S.

---

[1]　"DE" will refer to docket entries in Crim. No. 15-15, unless otherwise specified.

1

Department of Housing and Urban Development (HUD). It involved losses of approximately $3.1 million from fraudulently obtained mortgages.

Mr. Concepcion is currently serving an 84-month (7 year) sentence at Fort Dix. That facility consists of a low security federal correctional institution (FCI), with an adjacent minimum security satellite camp; Mr. Concepcion is housed at the FCI. He has served approximately five years, or 80%, of his sentence. His projected release date (apparently assuming he maintains good time credit) is June 7, 2021. (DE 97-4)

The Bureau of Prisons (BOP) is authorized by the CARES Act to transfer certain inmates to home confinement during the last six months or 10% of a sentence. *See* 18 U.S.C. § 3624(c)(2), 34 U.S.C. § 60541(c). Pursuant to guidelines promulgated by the Attorney General, BOP instituted its own review in response to the COVID-19 pandemic. It prioritized certain cases for transfer to home confinement, based on inmate characteristics, medical risk, and many other factors. (Declaration of James Reiser ("Reiser Decl.") ¶¶ 3–21, DE 97-1) BOP determined that Mr. Concepcion would not be transferred to home confinement pursuant to the CARES act. (Reiser Decl. ¶ 23) That is a separate remedy, however, from the one sought on this motion, and does not dictate a result here.

On May 1, 2020, Mr. Concepcion filed this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). As relevant here, the statute empowers the court to reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," based on (i) "extraordinary and compelling reasons," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant policy statement, U.S.S.G. § 1B1.13, echoes the requirement of "extraordinary and compelling reasons," and also requires that the defendant not present a danger to the safety of any other person or the community, within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(g). The accompanying application notes include examples of medical conditions considered "extraordinary and compelling," such as "metastatic solid-tumor

concer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). More generally, it defines such a condition would be satisfied by a defendant who is

> (I)   Suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.,* cmt. n.1(A)(ii). The examples are not exclusive; also relevant may be factors relating to age and family circumstances, or other factors identified by the BOP.

There is an administrative-exhaustion prerequisite, however, to the Court's exercise of that power. The power to file such a motion is lodged in the first instance with the BOP. Before filing a motion in court, the defendant must first request that the BOP file such a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). The court may consider the defendant's own motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." *Id.* The BOP cannot through mere inaction, however, stave off the court's assumption of jurisdiction; the passage of 30 days without action in effect will be deemed to be equivalent to exhaustion. Thus the prisoner may bring a motion in court after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility." *Id.*

It is undisputed that Mr. Concepcion filed this motion directly in federal court, without first exhausting administrative remedies. That, as the Third Circuit has recently held, is a "roadblock foreclosing compassionate release." at *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) (denying remand of appeal seeking compassionate release as futile in light of lack of exhaustion). *Accord United States v. Epstein,* Crim. No. 14-287, 2020 WL

3

1808616, at *4 (D.N.J. Apr. 9, 2020) (Wolfson, C.J.) (citing cases). Compliance with the exhaustion requirement is an integral part of this narrow exception to the basic principle that a court lacks the power to modify a sentence once it is imposed.

The government notes, and distinguishes, recent district court excusing the exhaustion requirement on grounds of futility—for example, the futility of waiting for 30 days when the prisoner has less than a month remaining to serve on his sentence. *See, e.g., United States v. Colvin,* 2020 WL 1613943 (D. Conn. Apr. 2, 2020). I take no position on the availability, or not, or a "futility" exception, because there is no need to do so. The defendant has made no showing that an application to the BOP would be futile. Even before the COVID-19 crisis began in earnest, the BOP was processing and granting First Step Act requests.

No one could fail to sympathize with an inmate's concern for his health in this institutional setting at this time of crisis. Even assuming that a health emergency would excuse the exhaustion requirement, however, the defendant has not demonstrated such an emergency. His failure to seek relief from the BOP has no adequate explanation. There is no documentation of his medical condition—only his vague self-diagnosis of "heart problems" and "high blood pressure." The last information before the court, which concededly dates from the presentence report filed in 2015, was that the defendant had high cholesterol and high blood pressure, common and chronic conditions. The defendant, who is not in the high risk age group (65 and over), does not state that he has sought or received treatment for these conditions. There is no indication that conditions at the institution are acute; BOP reports that there have been no COVID cases in the particular facility (the FCI component of Fort Dix) where the defendant is housed.[2]

---

2   The strongest case for bypassing the exhaustion that Mr. Concepcion cites, *United States v. Sawicz,* 2020 U.S. Dist. LEXIS 64418 (E.D.N.Y. Apr. 10, 2020), is distinguishable. It rested on a serious COVID-19 outbreak at FCI-Danbury and the prisoner's established hypertension.

## ORDER

Accordingly, for the reasons expressed above,

IT IS this 20th day of May, 2020

ORDERED that the motion (15cr15 DE 96, 15cr18 DE 24) for compassionate release is DENIED without prejudice for failure to exhaust administrative remedies.

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge